MARIE CÉLESTE LIVAUDAIS *v.* FELICITÉ HAYDEL.

APPEAL from the District Court of the First District, *Buchanan*, J.

*Derbigny* and *Labarre*, for the plaintiff.

*Grima* and *L. Janin*, for the appellant.

SIMON, J.  We are called upon to reverse a judgment by which the defendant is condemned to pay to the plaintiff the sum of $6218 69, a balance due on a certain claim of long standing— the principal originally amounting to $6000—secured by a special mortgage on the defendant's property.

The facts of the case are these : In the year 1835, the defendant and P. C. Becuel were the joint owners of a plantation and slaves, Becuel owning *two-thirds*, and the defendant *one-third* thereof.  One Ambroise Brou was also the owner of another plantation in an adjoining parish.  These three persons being largely indebted and unable to meet their engagements, applied, respectively, and separately, for a respite, and a meeting of their creditors was ordered to be convened in each case, and to be holden on the same day, and before the same notary.  The creditors of the three applicants met accordingly, and from the *procès verbal* of their deliberations, it appears, that previous arrangements havingbeen proposed and agreed to between the debtors and creditors, only one meeting was held and one vote given by the creditors, the principal object of which was to grant to the debtors a respite of one, two, three, four, five and six years, and to provide not only for the better security of the claims of all the creditors by special mortgages on their debtors' property, but also for the sale of the annual crops to be made on their debtors' plantations, which crops should be disposed of for the purpose of disc harging the debts in the manner thereinafter set forth. Among the different provisions contained in the *procès verbal*, of the deliberations, as first voted for by Joseph Sauvinet, the sixth provides, that by the act of compromise which is to be subsequently executed, an agent shall be appointed on behalf of the creditors, whose duty it shall be *to receive the yearly crops, to dispose of them by a sale thereof* in the city of New Orleans, or on the plantations, and *out of the proceeds* to pay ; *first,* the proportion due to the Union Bank ; *second,* the interest due thereon ; *third,* the privileged claims ; *fourth,* a yearly sum of five hundred dollars to Ambroise Brou's wife, (who was herself a creditor of her husband for a large amount ;) and *fifth, the balance to be distri-*

buted between the creditors in payment of the capital of their claims for the first five years, the sixth year's crop being to meet the interest (allowed at the rate of six per cent. per annum,) that may have accrued on the debts. The agent was also to be allowed a commission of three and half per cent, on the amount of the sales of the yearly crops.

All the creditors appeared at the meeting, (except the Union Bank, for the payment of whose claim by instalments provision was made,) and adopted in its extent the vote given by Joseph Sauvinet, the first voting creditor, with the final provision that all the conditional clauses, conditions and stipulations intended to be entered into by the act of compromise should be obligatory and binding on all the creditors.

On the 3d of July, 1835, an act of compromise, denominated a "*contrat d'union et d'atermoiement*" was accordingly passed by authentic act, between the three debtors on the one part, and their creditors on the other part, in which the aggregate amount of all the sums due by the debtors, is ascertained to be the sum of $183,045 68, including therein the sum of $30,042 15, owing to Mad. Brou, (the wife of one of the debtors,) that of $21,037 75, due by A. Brou to the Union Bank of Louisiana, and that of $15,722 50, due by Becuel to that Bank, and that of $8,312 50, due by the defendant to the same Bank.

The act of compromise under consideration contains also the following clauses and stipulations :—1o. " Que les sieurs A. Brou, P. C. Becuel, la dame veuve F. Haydel, la societé P. C. Becuel & Cie., &c., sont pour l' énumération des créances ci-dessus rapportées, *responsables comme endosseurs ou autrement, les uns pour un ou plusieurs des autres, du payement de la majeure partie desdites créances,*" &c. 2o. " Que pour sureté du payement en capital et intérêts, ainsi qu'il sera ci-après stipulé de toutes les sommes respectivement dues par lesdites parties de première part, elles ont par les présentes, affecté, obligé et hypothéqué en faveur de leurs créanciers," &c. 3o. " Les parties de seconde part [the creditors of the three debtors] accordent a leurs débiteurs, le répit d'un, deux, trois, quatre, cinq et six ans, à compter du 20 avril dernier, étant bien entendu que *les sommes provenant de la vente annuelle des récoltes des dites deux habitations sucreries*

*pendant les cinq premières années, ainsi que les sommes qui pourront être reçues dans cet intervalle de tems de M. Alex. Baron, seront appliquées au payement desdites dettes en capital seulement, et que la récolte de la sixième année, ainsi que la somme reçue de Baron dans ce laps de tems, seront appliquées au payement des intérêts à un taux de six pour cent par an sur le capital pour la première année, et sur la balance du capital après chaque dividende."* 4o. This clause provides for giving further time to the debtors after the expiration of the six years, *" si la dette totale dés débiteurs n'était pas* [then] *acquittée."* 6o. Louis Pilié is appointed agent by the creditors, with full power and authority, to act, and *"recevoir aussi les récoltes annuelles des sucres et melasses des dites deux habitations, disposer des dites récoltes en les vendant, &c., payer et acquitter avec les sommes recouvrées de M. Baron, et avec celles provenant de la vente des dites récoltes* ; 1o. The amount due to the Union Bank. 2o. The interest due thereon. 3o. The privileged claims. 4o. $500 annually to A. Brou's wife. 5o. *"Après ces payements, la balance annuelle pendant les cinq premières années sera divisée entre les autres créanciers, au marc la livre, ou autrement à tant pour cent du montant de leurs créances respectives en capital, à l' égard de la récolte de la sixième année, elle sera employée au payement des intérêts."*

This act of " concordat" was carried into execution by the agent receiving the yearly crops made on the two plantations, by selling those crops for the benefit of the creditors, and by applying the proceeds to the payment of the debts as provided for by the contract, that is to say, so far as they were to be applied to the extinguishment of the debts due by the three debtors to the Union Bank, to the interest due on the same, to the payment of the privileges, and to the annual payment of five hundred dollars to A. Brou's wife; and the balance was applied by the agent to the payment " *au marc la livre*" of the debts due by the three debtors without distinction. With regard to this part of the case, the record contains an agreement of counsel, by which the defendant admits all the statements in the accounts filed by the agents concerning the receipt of the crops, the price for which they were sold, and the payments made by the agents, but reserves the right to contest the correctness of the distribution of

the funds made by them, and to maintain that her proportion of the crops should have been exclusively applied to the payment of her own individual debts, and that the commission of three and a half per cent should, under the contract, be borne by the creditors, and not by the debtors.

The Judge, *a quo*, was of opinion that the payments complained of had been correctly made by the agent under the contract, that according to the stipulations therein contained, the payments were to be divided, *pro rata*, among the creditors, and that the commission due to the agent should come out of the funds by him administered : and accordingly, rendered a judgment liquidating the balance due by the defendant to the plaintiff, at the sum of $4191 99 of principal, and $2026 70 of interest, with a right of mortgage on the property described in the petition. The correctness of this judgment is the subject of the present controversy.

In order to ascertain the extent of the interest of the defendant in the amount of debts due by the three debtors, and thereby to enable us to come to a correct conclusion on the object which they had in view, when they entered into the contract under consideration, it is, perhaps, proper that we should first review the extent of their respective liabilities.

The whole amount of the debts is stated to be $188,045 68
Out of this amount, the sum of $30,042 15, due to
A. Brou's wife, is to be deducted, as not to be
paid by the agent, 30,042 15

Balance of debts to be paid, $158,003 53
On this sum A. Brou transferred to the creditors
his claims against Al. Baron, to the amount of
$21,900, 21,900 00

Leaving a balance to be paid with the crops of $136,103 53
Of this debt the defendant owed, at the date of the act, the sum of $21,275 60, including therein the debt by her due to the Union Bank, to wit, $8312 50, to be satisfied first under the contract, with the other sums due to the same bank by the two other debtors, to wit, $21,037 75 by A. Brou, and $15,722 50 by Becuel, making an aggregate amount due to the Union Bank of

$45,072 75, (more than one-sixth of which was the personal debt of the defendant,) to be first paid out of the proceeds of the crops.

Now the aggregate amount of the debts due personally by the defendant, was $21,275 60, a sum nearly equal to the one-sixth of the whole amount of the debt, to wit, $136,103 53 ; and the defendant owned only one-third of the plantation in partnership with Becuel, who owned the other two-thirds, whilst Ambroise Brou owned the whole of the other plantation. Supposing that the two plantations would produce an equal amount of revenue, it is obvious that the defendant was only entitled to one-sixth part of the proceeds of the crops, which would be in accordance with her proportion of the whole debt due to the Union Bank, and with her proportion of the other debt.

Under such circumstances, there is nothing extraordinary in the defendant's joining the two other debtors in the arrangements made with their creditors, and consenting to the proceeds of her portion of the crops being merged in the common fund, to be applied to the extinguishment of the debts due by the three debtors. Indeed, we are informed by the contract, that the debtors are " *responsables comme endosseurs, ou autrement, les uns pour un ou plusieurs des autres, du payement de la majeure partie des dites créances ;*" and among the debts which it is their object to secure and discharge, there is a large amount due by the defendant's co-proprietor, Becuel, and even by the partnership. This was clearly a sufficient inducement for her to consent that the proceeds of the crops should be applied, without distinction, *pro rata*, to the payment of the debts due by herself and by the two other debtors, and she was already aware that such application would nearly equal the interest which she had in the extinguishment of the debts, and in the means which were to be procured for that purpose.

But, by the terms of the contract, it seems to us that there cannot be any doubt as to the intention of the parties. All the debts due by the defendant and by the nephew and brother-in-law, are therein enumerated, and the three debtors, of the one part, " *de première part,*" consent that the whole amount thereof shall be paid to the creditors, "*parties de seconde part,*" out of the pro-

ceeds of the crops made on the two plantations, during the time allowed by the " *concordat ;*" the annual balance proceeding from the sale of said yearly crops to be divided " *au marc la livre,*" or by so much per cent on the amount of the principal of their respective claims, and the proceeds of the sixth crop to be applied to the payment of the interest. If it had been the intention of the parties that the proceeds of the crops should be first divided according to their respective and proportionate interest, and then applied to the payment of the debts by them due respectively, they would have said so, as, then, their respective creditors would have known what parts of such proceeds were to be applied to the payment of their respective claims ; but this idea is excluded by the very expressions used in the contract, " *la balance des récoltes sera divisée entre les autres créanciers a tant pour cent,*" which mean that *all the creditors*, whose names figure in the contract, except the Union Bank, the privileged creditors, and Mad. Brou, shall share, *pro rata*, in the division of the proceeds, without any distinction being made as to the persons by whom the debts may be due, or may have been contracted. That it was so understood, is also clearly shown by the clause which provides for the payments to be made to the Union Bank. It is said in the contract that *the amount due* (exigible) *to the Union Bank* shall be paid first, without any distinction as to the several sums due by the three debtors respectively ; whilst, if the parties had intended that their respective portions of the crops should have been first applied to the debts due by them respectively to the Union Bank, this would have been expressed so as to prevent a misapplication of the funds. It is the same with regard to the payment of the privileged claims, and to the sum of $500 to be paid to Mad. Brou ; these sums are to be taken out of the proceeds of the crops, *without any distinction*, and we agree with the Judge, *a quo*, in the opinion, that the surplus, after making such payments, was to be divided, *without any distinction*, between the creditors of the three debtors, in the proportion of the amount of their claims. We may also be permitted to remark, that if the defendant really understood her contract differently, it is not a little astonishing that the proceeds of the crops were distributed by the agent in a

manner contrary to her intention, during six years, without any opposition on her part.

With regard to the proposition that suretyship and solidarity are never presumed, we think, that although perfectly true, it is not applicable to the contract under consideration. Here, there is no suretyship or solidarity contracted. The defendant never became personally bound to pay the debts of the other debtors ; she only consented, that so far as the proceeds of her portion of the crops should be received by the agent, such proceeds should remain among the common funds, to be applied to the extinguishment of the mass of debts, among which her own was included ; and for aught we know, it is not clear that any part of these proceeds ever went to satisfy any other but her own debt. The amount of such proceeds was eventual, and depended wholly upon the success of the subsequent crops to be made on the two plantations. She had the advantage of being able to satisfy her own debts with the portions belonging to the other debtors, in case her crops had failed ; and we see no reason why, under the stipulations of the *concordat*, she should enjoy the advantages resulting therefrom, without subjecting herself to its disadvantageous consequences. She is not bound, *in solido*, with, or as the surety of the other debtors, but she must abide by the stipulations contained in the contract from which she was to be benefited. Its terms present no ambiguity, and we concur with the Judge, *a quo*, in the conclusion which he has adopted.

On the question of commissions, we think the judgment appealed from is correct. The commission of three and a half per cent due to the agent on the amount of the sales of the crops, may be considered as a part of the costs of administration, and ought to be paid out of the funds administered. The object of the agency was to enable the debtors to pay their debts within the time allowed to them by their creditors ; it was for the benefit of the former ; and, under the circumstances of the case, we are not ready to say that the expenses incurred by the debtors' insolvency, should be thrown upon the indulgent creditors who consented to wait six years, and more, for the payment of their claims. This, it seems to us, could not be done without injustice.

*Judgment affirmed.*